**The MANHATTAN SAVINGS BANK**

v.

**The UNITED STATES.**

**No. 7–76.**

United States Court of Claims.

July 8, 1977.

Patricia Magee Vaughan, Alexandria, Va., attorney of record for plaintiff. H. Clayton Cook, Jr., Adrian C. May, Jr., Washington, D.C., and Cadwalader, Wickersham & Taft, New York City, of counsel.

Arlene Fine, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant.

Before COWEN, Senior Judge, KUNZIG and BENNETT, Judges.

### ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

This case, before the court on cross-motions for summary judgment, involves Manhattan Savings Bank's (plaintiff or Manhattan) alleged liability for an adjusted insurance premium charge due upon the prepayment of a Federal Housing Administration (FHA) insured multifamily housing mortgage. At stake is approximately $36,000, the amount of the adjusted premium. Plaintiff does not contest the assessment of the premium; it is settled that the Government has the right to the money under 24 C.F.R. § 207.253(a)(1)(ii).[1] At issue is plaintiff's liability for the assessment. Resolu-

---

1. 24 C.F.R. § 207.253(a)(1)(ii):

   "(a) All rights under the insurance contract and all obligations to pay future insurance premiums shall terminate on the following conditions:
   (1) Payment to the Commissioner of an adjusted premium or termination charge computed as follows:
   (ii) One percent of the original face amount of the mortgage when the mortgage is prepaid in full or the contract of insurance is voluntarily terminated after five years from the date of initial endorsement for insurance;
   . . . . ."

The face amount of the mortgage was $3,902,400.00. Following adjustments not relevant to the case at bar, the adjusted premium charge was $35,734.90. For convenience purposes, we have rounded this figure to $36,000.

All C.F.R. sections are cited to the 1971 edition of the Code, in existence at the time this suit arose. Since this suit arose, the regulations have been amended. No adjusted premium charge is now due upon prepayment of an FHA insured mortgage. See 24 C.F.R. § 207.253(a)(1976).

tion of the question turns on whether plaintiff's assignee of the mortgage assumed the obligations of the mortgage insurance contract[2] so as to discharge plaintiff from its responsibility for the adjusted premium.

We hold for the Government. Simply put, plaintiff's assignee did not assume the responsibilities of the mortgage insurance contract. Plaintiff, therefore, remains liable for the adjusted premium charge.

Plaintiff's claim arises from its assignment of an FHA insured mortgage on a multifamily housing project known as Executive Towers, located in Phoenix, Arizona. On January 27, 1972, Manhattan transferred the Executive Towers mortgage to Greenebaum Mortgage Company (Greenebaum). Both Manhattan and Greenebaum were FHA-approved mortgagees. See 24 C.F.R. §§ 207.22, 203.1-4, .6-.9. Included in the documents transferred to Grennebaum by Manhattan was a Form 2090, "Federal Housing Authority, Transfer Notice (Multifamily Housing Mortgage or Loan)." Manhattan, as transferor, had filled in half of the form to delivery of it to Greenebaum. Instructions on the form stated that completion and delivery of the form to FHA constituted release of the transferor from, and assumption by the transferee of, all obligations under the mortgage insurance contract.[3] Greenebaum never completed the form and did not deliver it to the FHA.

Immediately following the assignment to Greenebaum by Manhattan, the Executive Towers mortgage was again transferred, this time from Greenebaum to the Continental Bank & Trust Co. Continental then remitted the amount of the unpaid principal and interest to plaintiff's bank.

On February 3, 1972, Executive Towers notified FHA that they had prepaid the mortgage. At the time, FHA regulations required an adjusted premium charge of one percent of any mortgage that was prepaid. See note 1, supra.

On September 19, 1972, Mr. John Mastradone, Chief, Multifamily Mortgage Branch, Insurance Division, FHA, wrote Manhattan stating that the Department of Housing and Urban Development (HUD) had been advised of prepayment of the Executive Towers' mortgage. He requested plaintiff to file a Form 311 terminating the mortgage insurance. Manhattan responded that it was no longer the mortgagee and that the mortgage had been assigned to Greenebaum. Plaintiff forwarded Mr. Mastradone's letter and Form 311 to Greenebaum. Mr. Mastradone then wrote Greenebaum, requesting it to file Form 311 and to pay the one percent adjusted insurance premium charge. Greenebaum refused, stating that it was only a nominee for others and "never was the owner for its own account or holder in due course of the mortgage in question."

Faced with both Manhattan's and Greenebaum's refusal to pay the premium charge, the Office of General Counsel of HUD determined that Manhattan was responsible for submission of the Forms 2090 and 311 and payment of the adjusted premium charge. HUD so informed Manhattan by letter of November 23, 1973. Following this, several letters passed between plaintiff and HUD in an unsuccessful effort to reach a solution to the payment problem.

The adjusted premium was still outstanding in 1975, when Manhattan claimed bene-

---

2. 24 C.F.R. § 207.261(d) states:

   "(d) *Transfers after full disbursement.* Transfers after full disbursement may be made only to a transferee approved by the Commissioner. Upon assumption by the transferee of all obligations under the contract of mortgage insurance, the transferor shall be released from its obligations under such contract. The transfer shall be reported to the Commissioner on a form satisfactory to the Commissioner."

3. Form 2090 was in fact superceded by Form 2080 prior to 1972. Because the only change in the instructions on Form 2080 concerned giving notice to FHA of the mortgage transfer and the failure to give notice is not material to our decision, we do not consider what effect, if any, the changes incorporated into Form 2080 might have in evidencing defects in the regulations and forms used in the transfer between plaintiff and Greenebaum. See *Martin Lane Co. v. United States*, 193 Ct.Cl. 203, 218, 432 F.2d 1013, 1020 (1970).

fits under a different mortgage insurance contract on which the mortgagor had defaulted.[4] HUD approved plaintiff's claim for the insurance proceeds, but deducted the amount of the adjusted premium due on the Executive Towers mortgage insurance contract. Plaintiff objected to the setoff and brought suit in this court for recovery of the approximately $36,000.

Plaintiff's argument is based on the proposition that Greenebaum assumed the obligations of the mortgage insurance contract when Greenebaum became the assignee of the mortgage. From this proposition flows, says plaintiff, Greenebaum's liability for the adjusted premium and plaintiff's "automatic release" from the contract of mortgage insurance obligations. For support, Manhattan relies on applicable HUD regulations, in particular 24 C.F.R. § 207.261(d), and common law.

In opposition, defendant urges that Greenebaum never assumed the obligations of the contract of mortgage insurance and, therefore, that plaintiff was never relieved of its duty to pay the adjusted premium charge. The Government also points to 24 C.F.R. § 207.261(d) and common law principles as supporting its preferred solution of the case.

Upon examination of the parties' submissions to the court, it becomes apparent that the decisive issue is whether plaintiff's assignee, Greenebaum, assumed the obligations of the contract of mortgage insurance (in accordance with 24 C.F.R. § 207.261(d)) so that Manhattan is excused from liability for the premium charge. The relevant language of § 207.261(d) is:

> Upon assumption by the transferee of all obligations under the contract of mortgage insurance, the transferor shall be released from its obligations under such contract.

Plaintiff would have the court hold that Greenebaum's acceptance of the mortgage note with an FHA mortgage insurance endorsement on it is sufficient to show Greenebaum's assumption of the insurance obligations. While Greenebaum's acceptance of the mortgage note might evidence Greenebaums assumption of the *mortgage*, it does not, *ipso facto*, evidence assumption of the obligations of the *contract of mortgage insurance* under the facts of this case.

The plain meaning of 24 C.F.R. § 207.-261(d) requires an assumption of the insurance contract obligations by the transferee in order for the transferor to be released. The words of the regulation are clear, and we are, therefore, bound to give them effect. *Compare Selman v. United States*, 204 Ct.Cl. 675, 680, 498 F.2d 1354, 1356 (1974) *with S. W. Aircraft, Inc. v. United States*, 551 F.2d 1208, at 1211 (Ct.Cl.1977). Applying the regulation to the instant case, we are led to the conclusion that Greenebaum did not assume the duties concomitant with the contract of mortgage insurance.

Greenebaum, the company supposedly assuming the obligations, specifically did not complete two different forms, either of which, if completed, might have signified assumption of the insurance contract duties. First, Greenebaum failed to complete Form 2090. This "transfer notice" form contained specific instructions stating that completion and return of it to FHA constituted assumption of the insurance obligations by the transferee and release of the transferor. Greenebaum was given this form on January 27, 1972, the day Manhattan assigned the mortgage to Greenebaum. Manhattan, as transferor, had already completed part of the form. All required of Greenebaum was *completion* of the form. This it never did. Since Greenebaum never even "completed" the form, we need not reach any possible problem of "return." Upon whose shoulders responsibility for returning the form to FHA rested is unclear, and in view of our disposition of the case, unnecessary to decide.

Second, upon receiving Form 311 ("Request for termination of Multifamily Mort-

---

4. Manhattan, as mortgagee, had assigned the mortgage to HUD upon default of the mortgagor. This entitled Manhattan to receive the insurance proceeds. 12 U.S.C. § 1743(c) (1970).

gage Insurance") and being asked to pay the adjusted premium, Greenebaum denied that it had ever assumed any responsibilities under the mortgage. Greenebaum refused either to complete Form 311 or to remit the premium.

Greenebaum's failure to complete either Form 2090 at the time the mortgage was assigned, or Form 311 after the mortgage was prepaid certainly evidences Greenebaum's refusal to assume the duties associated with the contract of mortgage insurance. By the words of the regulation, only "upon assumption by the transferee" is the transferor released from its obligations. 24 C.F.R. § 207.261(d), *supra*. Furthermore, in our view, plaintiff has failed to prove any such assumption. Since Greenebaum refused to complete the forms,[5] and there is no other specific evidence pointing to Greenebaum's assumption, we can only conclude that Manhattan was never released from its obligation and remains liable for the premium.[6]

Our conclusion is also supported by common law principles of assignment of legal duties. In order for there to be a valid assignment relieving plaintiff of its obligations under the insurance contract, there must be a substitute party who assumes the obligations. 4 Corbin on Contracts § 866 (1951). As discussed *supra*, the evidence

points to the conclusion that Greenebaum never assumed plaintiff's responsibilities with regard to the insurance contract, so plaintiff was never released.

In addition, the fact that Greenebaum was an FHA approved mortgagee does not alter this conclusion. Merely because Greenebaum had FHA's prior approval to become a holder of an FHA insured mortgage does not mean that Greenebaum automatically assumed the mortgage insurance obligations upon becoming the assignee of an FHA insured mortgage.[7]

Accordingly, upon consideration of the briefs and exhibits of the parties, and after hearing oral argument, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the petition is dismissed.

---

5. Note that we are not saying that return of the forms was a condition to a valid assignment. Instead, Greenebaum's refusal to complete the forms is evidence of its refusal to assume the insurance contract duties. In another case, with different facts, the failure to return the forms may not prevent a finding of assumption.

6. Plaintiff also argues that since 24 C.F.R. § 207.251(g) defines "mortgagee" to include "the original lender * * * and such of its assigns as are approved by the Commissioner," and since 24 C.F.R. § 207.254(c) obliges a mortgagee (and thus an assignee) to be bound by all the mortgage insurance regulations, it must follow that Greenebaum, as plaintiff's assignee, was bound by the regulations requiring assumption of the insurance contract's obligations, including payment of the termination premium. We cannot accept this argument,

for we cannot accept the premise. 24 C.F.R. § 207.251(g) does not of itself specify whether the "assigns" it speaks of include the assignees of the insurance contract or are limited to the assignees of the mortgage note, an important distinction to which we have previously adverted. The regulation is therefore of no help to plaintiff in countering our reasoning.

7. Similarly, Greenebaum's assumption of the mortgage did not "automatically" release plaintiff from its duties under the insurance contract. If Greenebaum's assumption of the mortgage had the effect plaintiff states it did, then 24 C.F.R. § 207.261(d) would be without meaning, and we would be at a loss to explain its existence.